UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MILTON B. ADAMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-12629-FDS |
| NEW ENGLAND SCAFFOLDING, INC., | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
IN LIMINE TO PRECLUDE PLAINTIFF'S EXPERT DAVID L. BERARD

SAYLOR, J.

This is a negligence action arising out of a workplace injury. Plaintiff Milton B. Adams, while working as an employee of non-party Rockwood Corporation, fell from a height of approximately 39 feet from scaffolding that had been at least partially constructed by defendant New England Scaffolding, Inc. ("NESI"). The complaint alleges that NESI constructed the scaffolding in a negligent and unsafe manner and that Adams sustained severe neck and back injuries as a result of the fall. Jurisdiction is based on diversity of citizenship.

Defendant has moved to exclude the testimony of plaintiff's expert witness, David L. Berard. For the following reasons, the motion will be granted in part and denied in part.

I.   **Background**

   A.   **Factual Background**

   The following facts are undisputed unless otherwise noted.

   In the fall of 2011, Rockwood Corporation was hired by the South Central Connecticut

Regional Water Authority to refurbish the Saltonstall Ridge Water Storage Tank in East Haven, Connecticut.  (Def. SMF ¶ 1; Compl. ¶ 6).  Rockwood contracted with defendant NESI to erect certain scaffolding both inside and outside the water tank.  (*Id.*).

In October 2011, Milton B. Adams was working as a laborer on the water-tank project for Rockwood.  (Def. SMF ¶ 27; Compl. ¶¶ 5, 9).  His specific job duties included removing paint from the exterior of the water tank.  (Compl. ¶ 9).  He was not an employee of NESI.

On October 22, 2011, Adams ascended to the top level of the exterior scaffolding in order to perform his paint-removal duties.  (Def. SMF. ¶ 15; Compl. ¶ 10).  Upon reaching the top level, he fell from a height of approximately 40 feet to the ground below.  (Def. SMF ¶¶ 23-24).  According to the complaint, Adams suffered "severe neck and back injuries in the fall."  (Compl. ¶ 12).

**B.     The OSHA Regulations**

The present dispute centers on a regulation issued by the United States Occupational Safety and Health Administration, 29 C.F.R. § 1926.451, concerning scaffolds.  In its electronic form, the regulation is 18 pages long.  Although it is not entirely clear, it appears that the key provisions of the regulation are as follows:

> **§ 1926.451 General requirements.**
>
> . . .
>
> **(b) Scaffold platform construction.**
>
> (1) Each platform on all working levels of scaffolds shall be fully planked or decked between the front uprights and the guardrail supports as follows:
>
> (i) Each platform unit (e.g., scaffold plank, fabricated plank, fabricated deck, or fabricated platform) shall be installed so that the space between adjacent units and the space between the platform and the uprights is no more than 1 inch (2.5 cm) wide . . . .

. . .

Exception to paragraph (b)(1):  The requirement in paragraph (b)(1) to provide full planking or decking does not apply to platforms used solely as walkways or solely by employees performing scaffold erection or dismantling.  In these situations, only the planking that the employer establishes is necessary to provide safe working conditions is required.

. . .

**(g) Fall protection.**

(1) Each employee on a scaffold more than 10 feet (3.1 m) above a lower level shall be protected from falling to that lower level.  Paragraphs (g)(1)(i) through (vii) of this section establish the types of fall protection to be provided to the employees on each type of scaffold.

. . .

(v) Each employee on a walkway located within a scaffold shall be protected by a guardrail system (with minimum 200 pound toprail capacity) installed within 9 ½ inches (24.1 cm) of and along at least one side of the walkway.

. . .

(vii) For all scaffolds not otherwise specified in paragraphs (g)(1)(i) through (g)(1)(vi) of this section, each employee shall be protected by the use of personal fall arrest systems or guardrail systems meeting the requirements of paragraph (g)(4) of this section.

. . .

(4) Guardrail systems installed to meet the requirements of this section shall comply with the following provisions . . . :

(i) Guardrail systems shall be installed along all open sides and ends of platforms. Guardrail systems shall be installed before the scaffold is released for use by employees other than erection/dismantling crews.

(ii) The top edge height of toprails or equivalent member on supported scaffolds manufactured or placed in service after January 1, 2000 shall be installed between 38 inches (0.97 m) and 45 inches (1.2 m) above the platform surface.  . . . When conditions warrant, the height of the top edge may exceed the 45–inch height, provided the guardrail system meets all other criteria of paragraph (g)(4).

. . .

(iv) When midrails are used, they shall be installed at a height approximately midway between the top edge of the guardrail system and the platform surface.

**(h) Falling object protection.**

. . .

(4) Where used, toeboards shall be:

. . .

(ii) At least three and one-half inches (9 cm) high from the top edge of the toeboard to the level of the walking/working surface. Toeboards shall be securely fastened in place at the outermost edge of the platform and have not more than ¼ inch (0.7 cm) clearance above the walking/working surface. Toeboards shall be solid or with openings not over one inch (2.5 cm) in the greatest dimension.

29 C.F.R. § 1926.451.

    **C.**    **Expert Report of David Berard**

Plaintiff's expert witness, David Berard, is a licensed professional engineer with a B.S. from Lowell Technological Institute. He is a consultant in occupational safety and health and part-time instructor in safety and health at Keene State College and The Safety and Health Council of Northern New England. From May 2000 to January 2009, he was a Compliance Assistance Specialist for the Occupational Safety and Health Administration (OSHA), and prior to that he was an OSHA Compliance Officer from March 1977 to May 2000.

Berard's expert report, among other things, includes the following statements:

A review of OSHA standards indicates several safety standards were not being followed by NESI. NESI knew and agreed in their deposition that their workers and any subsequent worker using the scaffold needed a scaffold, which was in compliance with the OSHA standards. Additionally, several contracted specifications, supplied by NESI, for the scaffold to be erected in accordance with the OSHA standards were not being followed by NESI. See the following:

**29 CFR 1926.451(b)(1) Each platform on all working levels of the scaffolds shall be fully planked or decked between the front uprights and the guardrail supports as follows in section 1926.451(b)(1).**

The scaffold erector (NESI) did not ensure that all work levels were fully planked.

Rockwood Corp. (Rockwood) requested a proposal from NESI.  NESI provided a proposal that the scaffold was to be erected in accordance with the OSHA standards. . . . The specifications [from NESI] agreed the scaffold was to be erected in accordance to the OSHA standards.

. . . NESI did not fully plank all the work levels.  NESI only installed/erected two plank wide work platforms on all the elevated work levels.  This created a safety hazard for NESI workers and all subsequent users of the scaffold.  The unsafe conditions created by the lack of the work platforms being fully planked contributed to the plaintiff's accident.

**29 CFR 1926.451(g)(1) Each employee on a scaffold more than 10' above a lower level shall be protected from falling to the lower level.**

. . . The scaffold specifications required NESI to erect the scaffold in accordance with OSHA standards, and the specifications specifically required guardrails to be installed. . . . Guardrails need a top rail 42" high, a midrail and a toeboard or equivalent.  In addition guardrails should be installed at all open sides of the platforms, and platforms should have no openings greater than 1" wide.  NESI did not install guardrails on all elevated work platforms on the scaffold, which were over 10' above the ground. . . . NESI was aware of the need and OSHA standard to protect work platforms with guardrails on all open sides greater than 10' above the ground.  NESI did not provide guardrails on all open sided work platforms at elevated locations.  This created a falling hazard to NESI workers and for all subsequent users of the scaffold such as Rockwood.  This directly contributed to the plaintiff's accident on 10/22/2010.

**OSHA Directive number:  CPL 2-0-124, Multi-employer citation policy.  Employers must not create violative conditions.  An employer that does so is citable even if the only employees exposed are those of other employers at the site.**

On the day of the plaintiff's accident, the plaintiff was working on a scaffold that NESI did not erect in a safe manner.  NESI thus created unsafe working conditions for all workers that would have need to use the scaffolding to perform their work on the site. . . . These unsafe conditions were created by NESI and were in violation of OSHA standards.  Additionally, these unsafe conditions were in violations of the scaffold specifications NESI agreed to follow.  These unsafe conditions directly contributed to the plaintiff's accident on 10/22/2010.

**Summary of findings:**  It is my opinion, within a reasonable degree of certainty and within my profession of safety, the lack of safety precautions (as described above) to protect the workers on the scaffold erected by NESI that hazards

> associated with working at an elevated location were allowed to exist. Due to these unabated hazards the plaintiff sustained serious injuries when he accidentally fell from an unprotected scaffold platform. NESI had a duty under OSHA standards and contractually to provided a minimum level of safety protection. They failed to do so.

(Pl. Opp. Mem. Ex. 4).

### D.     Procedural Background

Adams filed this lawsuit on October 17, 2013. On April 30, 2015, NESI filed a motion in limine to exclude the testimony of Berard. In substance, NESI contends (1) that Berard is not qualified to render such an opinion and (2) that his opinion constitutes improper expert testimony as to a legal issue, which is properly reserved to the Court.

## II.     Legal Framework

### A.     Rule 702

The admissibility of expert testimony is largely governed by Fed. R. Evid. 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The adoption of Rule 702 in its present form codified the standard of admissibility for expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).

The "ultimate purpose" of the *Daubert* inquiry is to determine whether the testimony will be helpful to the jury. *See Cipollone v. Yale Indus. Prods., Inc.*, 202 F.3d 376, 380 (1st Cir. 2000). A court must determine whether the expert's opinion is relevant, "not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed

opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (citing *Daubert*, 509 U.S. at 591-92).

The Rule 702 inquiry "is a flexible one, and there is no particular procedure that the trial court is required to follow in executing its gatekeeping function." *Diaz*, 300 F.3d at 74 (citation and internal quotation marks omitted). Courts enjoy "substantial discretion" in deciding whether to admit or exclude relevant expert testimony. *Mitchell v. United States*, 141 F.3d 8, 15 (1st Cir. 1998) (citing *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)). Trial judges must also carefully evaluate whether the challenge to the expert testimony goes more to the weight of the proffered opinion, rather than its admissibility. *See Ruiz–Troche*, 161 F.3d at 85 (lack of peer-reviewed publications supporting the expert's opinion, alone, was not enough to disqualify its admissibility because the opinion rested upon good grounds generally and should be tested by the "adversarial process"); *Mitchell*, 141 F.3d at 15 (stating that expert's lack of specialty practice in the area about which he testified went to weight, not admissibility).

B.    **Limitations on Expert Legal Testimony**

It is well-settled that "purely legal questions and instructions to the jury on the law to be applied . . . [are] exclusively the domain of the judge." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997); *see also Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) ("[I]t is axiomatic that the judge is the sole arbiter of the law and its applicability.").[1]

Nonetheless, and despite occasional judicial pronouncements to the contrary, there is no blanket prohibition on expert testimony concerning the law. *See Gomez v. Rivera Rodriguez*,

---

[1] The First Circuit in *Nieves-Villanueva* noted that "[o]ne well-recognized exception is for questions of foreign law," an issue not present here. 133 F.3d at 99.

344 F.3d 103, 115 n.6 (1st Cir. 2003) (noting that exclusion of expert testimony concerning the law is not a "per se rule"); *Nieves-Villanueva*, 133 F.3d at 100-01 (noting that "there may be particular areas of law, such as legal malpractice, where expert testimony on legal matters is admissible where it would normally be excluded," and that the court could "also hypothesize instances in rare, highly complex and technical matters where a trial judge, utilizing limited and controlled mechanisms . . . permits some testimony seemingly at variance with the general rule." (footnote omitted)).[2] Indeed, it would be unwise and unworkable to impose such a prohibition. We live in a highly complex and often bureaucratic society with a multitude of legal and regulatory requirements; it is frequently the case that the acts or omissions of the parties, or their legal or contractual obligations, can only be fully understood in the context of a particular regulatory environment. Such a regulatory environment often needs to be explained to lay persons, and therefore expert testimony may be helpful to the jury to understand the issues in the case.

The admission of expert evidence concerning the law is not nearly as rare as the case law might suggest. One obvious example is the application of the tax laws. The Internal Revenue Code is a purely legal construct; nonetheless, no tax case, civil or criminal, could be litigated in a sensible way without any mention of the tax code by anyone other than the judge. And therefore it is routine to admit testimony, usually from a representative of the Internal Revenue Service, concerning the tax code in such cases. *See, e.g.*, *United States v. Fogg*, 652 F.2d 551, 556-57 (5th Cir. Unit B 1981) (IRS agent-accountant allowed to testify as to tax consequences of a

---

[2] Some courts have expressed prohibitions on expert testimony concerning the law in fairly sweeping terms. *See, e.g.*, *Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 294 (N.D. Ill. 2005) (holding that expert's opinion that regulation applied was a "legal opinion" and "legal opinions and conclusions cannot be offered by experts.") (citing *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003)); *Purnell on behalf of Estate of Purnell v. United States*, 1987 WL 13790, at *3 (E.D. Pa. July 8, 1987) (an expert "may not testify about what statutes or regulations are or are not applicable to the case at hand.").

transaction). For example, in a prosecution for tax evasion, the government must prove that the defendant had a "tax due and owing." *See, e.g.*, *United States v. Hogan*, 861 F.2d 312, 315 (1st Cir. 1988). To prove that a tax was owed, the government normally calls a representative of the IRS to testify that he or she performed a calculation of the defendant's income, deductions, exemptions, and taxes. *See, e.g.*, *United States v. Sutherland*, 929 F.2d 765, 780 (1st Cir. 1991). Routinely, such witnesses testify as to various provisions of the tax code, including such basics as the requirement that the taxpayer must report all income; that the income must be reported on a Form 1040; and that the return must be filed by April 15 of the following year.

Another example where expert testimony concerning the law is routinely admitted is in personal injury actions where the defendant is alleged to have violated a health or safety regulation. *See, e.g.*, *Pelletier v. Main Street Textiles, L.P.*, 470 F.3d 48, 53-55 (1st Cir. 2006) (trial judge in personal injury case permitted evidence of some OSHA regulations and Massachusetts Building Code provisions, although expert was not permitted to testify about the applicability of the OSHA regulations); *Rolick v. Collines Pine Co.*, 975 F.2d 1009, 1013-14 (3d Cir. 1992) ("We can think of no reason under the Federal Rules of Evidence why the OSHA regulation is not relevant evidence of the standard of care"); *see also Miller v. Chicago & N.W. Transp. Co.*, 925 F. Supp. 583, 587-88 (N.D. Ill. 1996) (finding OSHA regulations relevant to issue of reasonableness of safety precautions in FELA case); *compare Northern Heel Corp. v. Compo Industries, Inc.*, 851 F.2d 456, 468 (1st Cir. 1988) (expert testimony as to violations of OSHA regulations permitted in case involving claims of breach of contract and misrepresentation).[3] It is well-settled that such a violation is evidence of negligence, although

---

[3] Appellate cases have often noted the wide discretion afforded to trial judges to admit or exclude expert testimony, including expert testimony concerning the existence or application of a regulation. *See, e.g.*, *Pelletier*, 470 F.3d at 54-55. But the fact that a trial judge has the discretion to exclude expert testimony concerning a regulation does not mean it is necessarily preferable to do so.

not negligence *per se*. *See, e.g., Rolick*, 975 F.2d at 1013-14.  Again, it is hard to see how such an issue could be litigated as a practical matter if no witness were permitted to mention the existence of the regulation or its application to the facts.[4]

Surely one of the reasons that such testimony is routinely admitted without objection—and often without anyone even noticing that the testimony includes legal conclusions—is that the relevant law is not in dispute.[5]  An expert for the defendant in a criminal tax prosecution could not testify, for example, that income earned from interest and dividends need not be reported. But testimony that tax returns are due in April of the following year is beyond dispute; it helps the jury to understand the case; and normally there is no sensible reason to exclude it.

Thus, one of the most important limitations on expert testimony concerning the law is that such testimony has to accurately state the law.   An expert cannot simply opine as to his or her view of a disputed point of law, and competing experts cannot offer competing legal opinions.  *See, e.g.*, *Sancom v. Qwest Communications Corp.*, 683 F. Supp. 2d 1043, 1053 (D.S.D. 2010) (excluding certain expert testimony concerning federal telecommunications statutes on the apparent ground that the expert was offering his own interpretation of those statutes).  If there is such a dispute, it is not for the jury to resolve it; only the court can do so. Put simply, any expert description of the law is admissible only if it is correct.

Courts have also suggested from time to time that experts cannot testify that they have

---

[4] It is true that judges may take judicial notice of regulations, and that they could be admitted on that basis. *See* Fed. R. Evid. 201; *Northern Heel Corp. v. Compo Industries, Inc.*, 851 F.2d 456, 468 (1st Cir. 1988).  But the bare admission of a regulation, without any accompanying witness testimony, is a poor method for communicating its substance to the jury.  To the extent that the goal is to permit the jury to make an intelligent assessment of the regulation and its application to the case, witness testimony is normally the preferred method of doing so.

[5] The undersigned judge recently presided over a criminal trial involving allegedly fraudulent sales of securities.  On multiple occasions throughout the course of the trial, witnesses testified as to propositions of law concerning the regulation of securities (for example, that it was illegal to sell unregistered securities or to act as a broker-dealer without a license).  None of those legal propositions were controversial, and none drew an objection.

applied a set of facts to the law and concluded that the facts constitute a violation of the law. *See, e.g.*, *Pelletier*, 470 F.3d at 54-55 (affirming decision of district judge to exclude "expert testimony about the applicability of OSHA regulations to [defendant]"). But that, too, is an overstatement. Again, for example, it is routine for courts in tax evasion prosecutions to permit an IRS representative to testify that he or she performed a tax calculation, using various deductions, exemptions, and other provisions of the Internal Revenue Code. *See, e.g.*, *Sutherland*, 929 F.2d at 780. Such testimony is normally labeled "summary" or "accounting" testimony. *See id.* (referring to witness as a "summary witness"). Whatever the label, it is, in substance, expert testimony applying the facts (the defendant's income and expenses) to the law (the tax code) to reach a legal conclusion (that a tax was owed). Again, such evidence is routinely admitted, because it is helpful to the jury and it is not unfair. Similar evidence is routinely admitted in a variety of other contexts, as well. *See, e.g.*, *United States v. Buchanan*, 787 F.2d 477, 483 (10th Cir. 1986) (holding that expert's testimony that a certain device was required to be registered with the Bureau of Alcohol, Tobacco, and Firearms was admissible); *United States v. Gold*, 743 F.2d 800, 816 (11th Cir. 1984) (holding that district court did not abuse its discretion by permitting Health and Human Services Special Agent to testify whether particular claims qualified for reimbursement under Medicare).

Where a regulatory requirement is ambiguous or unclear, expert testimony must be considered with some care. An expert's opinion that a particular action violated a regulation may be strict application of facts to law, or it may be, in form or in substance, an interpretation of an ambiguous or unclear law. The former, as a general matter, ought to be permitted; the latter is not. But the distinction between the two may be muddied or imprecise. *See Nieves-Villanueva*, 133 F.3d at 100 ("it is often difficult to draw the line between what are questions of law, what

are questions of fact, and what are mixed questions.").[6]

Suppose, for example, a case in which a plaintiff has asserted a product liability claim against the manufacturer of a machine. The plaintiff contends that the safety guard on the machine was inadequate, and that a safety regulation called for the guard to be at least twelve inches high. An expert would presumably be allowed to testify that the regulation in question called for a twelve-inch guard; that he measured the guard in dispute; and that it was only ten inches high. It is difficult to see why the expert could not take the next step, and express a conclusion that the guard violated the safety regulation.

Suppose, however, the regulation only said that guard had to be "safe." The expert could not testify that in his opinion the term "safe" meant that the machine must have at least a twelve-inch guard. That would be an expert opinion as to the meaning of an unclear regulation. But it seems entirely reasonable to permit the expert to testify (1) that the regulation required that the guard be "safe"; (2) that, in his opinion, the guard was not safe because it was too small; and (3) that, in his opinion, the guard should have been at least twelve inches high. The distinction between the two lines of testimony may appear subtle, but that subtlety is nonetheless important: the former is an impermissible opinion on an unclear provision of law, and the latter is a permissible opinion as to the design of a product, considered against the backdrop of the applicable regulation.

---

[6] The Court in *Nieves-Villanueva* went on to observe:

> Indeed, the definition of what is law and what is application or practice may be difficult to ascertain. This may be particularly so when the issues involve not only a statute and formally promulgated regulations, but also guidelines, handbooks, advisory rulings, interpretive bulletins, general counsel's letter opinions, informational notices and similar accoutrements of the modern bureaucratic state.

133 F.3d at 100.

Two other limitations on expert legal testimony must also be noted. First, although Fed. R. Evid. 704 provides that a witness's opinion need not be excluded merely because it addresses an ultimate issue, many courts have nonetheless excluded expert testimony concerning a legal conclusion on the ground that it merely seeks to tell the jury what decision to reach. *See, e.g.*, *United States v. Perkins*, 470 F.3d 150, 159-60 (4th Cir. 2006) (expert's testimony was admissible where it did not "merely [tell] the jury what verdict to reach."); *Specht v. Jensen*, 853 F.2d 805, 808-10 (10th Cir. 1988) (expert's testimony in civil rights lawsuit under 42 U.S.C. § 1983 that a police search was illegal because no consent was given should have been excluded; "the expert in this case was improperly allowed to instruct the jury on how it should decide the case"). This has sometimes been articulated as a rule against allowing the expert to "usurp" the role of the judge or jury. *See, e.g.*, *1 Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 528 (S.D.N.Y.2001) ("Expert evidence should not be permitted to usurp . . . the role of the jury in applying the law to the facts before it."). [7]

Accordingly, an expert witness normally should not be permitted to testify as to an ultimate legal conclusion, such as an opinion that a defendant was "negligent." *See, e.g., Andrews v. Metro-North Commuter R. Co.*, 882 F.2d 705, 708-09 (2d Cir. 1989) (expert in a negligence action may not testify that a defendant railroad company was "negligent."). The

---

[7] The Advisory Committee Note to Rule 704 includes the following:

> [Rule 704] does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . . . . . They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704, Advisory Committee Note.

essential problem is not that such an opinion is a legal conclusion, or that it concerns an ultimate issue, but that it would not "help" the trier of fact within the meaning of Fed. R. Evid. 702. *See* 4 *Weinstein's Federal Evidence*, § 704.04[2](a) (expert testimony is not helpful "when it supplies the jury with no information other than the witness's view of how the verdict should read."). Such an opinion should therefore be admitted rarely, if at all.

Finally, Rule 403 provides an additional limitation on opinion testimony. Under Rule 403, expert scientific testimony that is admissible under Rule 702 or Rule 704 may nonetheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *see also Daubert*, 509 U.S. at 595. Thus, expert testimony that is relevant and that passes muster from a Rule 702 standpoint may nonetheless be excluded if it is likely to be misinterpreted or misused by the jury.

To summarize:

1. There is no general prohibition against an expert describing the law (including specific regulations or a regulatory framework).

2. An expert can describe the law only if that description is accurate. If there is a dispute as to the law, it is for the court to resolve.

3. There is no general prohibition against an expert describing the application of facts to law, or stating a conclusion based on that application. However, any such testimony must not be, in form or substance, an opinion as to a disputed issue of law.

4. All expert testimony concerning the law must be helpful to the jury in accordance with Fed. R. Evid. 402. Testimony by an expert concerning an ultimate legal conclusion is not likely to be helpful, and therefore should rarely be admitted.

> 5. All expert testimony concerning the law is subject to the limitations of Fed. R. Evid. 403.

With those principles in mind, the Court will turn to the issues presented by Berard's proposed expert testimony.

### III. Analysis

Berard's proffered testimony includes (1) his explanation of the requirements imposed by two Occupational Safety and Health Administration regulations, 29 C.F.R. § 1926.451(b)(1) and 29 C.F.R. § 1926.451(g)(1); (2) an opinion that those regulations applied to the scaffolding at NESI's work site; (3) an opinion that NESI violated those regulations; and (4) an opinion that NESI owed a duty to Adams, that it breached that duty, and that its breach was the cause of Adams's injuries. NESI seeks to bar the admission of that testimony in its entirety.[8]

#### A. Berard's Qualifications as an Expert.

As an initial matter, NESI challenges Berard's qualifications to testify as an expert on the ground that he has no relevant experience in personally constructing or designing scaffolding. Although the parties dispute the extent of his personal experience in that specific area, it is undisputed that Berard has substantial experience as an OSHA compliance officer, professional engineer, and safety instructor. After a review of his qualifications and other materials in the record, the Court finds that he is sufficiently qualified to testify as an expert on the application of OSHA regulations concerning scaffolding.

#### B. Reference to the Regulations

NESI further seeks to exclude Berard's testimony to the extent that it refers to the

---

[8] NESI also seeks to exclude the testimony on the ground that OSHA regulations apply only to employees, and that Adams was not its employee. That argument is the subject of a separate motion, which will be addressed separately.

requirements of 29 C.F.R. § 1926.451(b) and § 1926.451(g). Berard's opinion as to those regulations is that together they required that the scaffolding used by Adams be fully planked and include guardrails for fall protection.

It appears that NESI does not dispute that Berard's reading of those regulations is correct. Instead, the dispute between the parties seems to center on whether the regulations apply at all under the circumstances. NESI instead contends that under an exception to § 1926.451(b), the regulation does not apply to "platforms used . . . solely by employees performing scaffold erection or dismantling." 29 C.F.R. § 1926.451(b) (exception to paragraph (b)(1)). It further contends that either a guardrail or a fall arrest system was required under the regulation, and that Rockwood supplied the necessary fall arrest system. The parties' disagreement as to the applicability of the regulations thus turns on factual questions, such as whether the scaffolding at issue was being used "solely" by employees performing "erection or dismantling" at the moment Adams fell from the platform, and whether Rockwood supplied a fall arrest system.

Under the circumstances, the regulations may be admitted in evidence, and Berard may describe those regulations. That description, however, must be accurate, and not misleading; for example, if asked, Berard must acknowledge the existence of the exception. And that description may not include editorial comment or opinion as to the meaning or purpose of the regulations.

### C.     **Application of the Regulations**

Assuming that he lays a proper factual foundation, Berard may explain why, in his opinion, the scaffolding at issue did not comply with the regulation—for example, because it was not "fully planked or decked" or because Adams was not "protected from falling" by an appropriate guardrail or fall arrest system. Any such testimony must be carefully tied to the

language of the regulation. He may also acknowledge any factual assumptions on which his opinion is based, such as whether, as a factual matter, the scaffolding was not "used solely by employees performing scaffold erection or dismantling."[9]

### D. Opinion That the Regulations Were Violated

NESI next contends that Berard's testimony should be limited so as to preclude his opinion that NESI violated OSHA regulations. As noted, evidence that NESI violated OSHA regulations—although not dispositive of whether NESI was negligent—is evidence of negligence and therefore may be helpful to the jury. Nor does such testimony simply instruct the jury how to decide the case. Accordingly, assuming Berard establishes the factual basis for his opinion, he may testify that NESI violated 29 C.F.R. §§ 1926.451(b) and 1926.451(g).

### E. Opinion Concerning Duty, Breach, and Causation

In the last paragraph of his report, Berard states:

> Due to [NESI's lack of safety precautions] the plaintiff sustained serious injuries when he accidentally fell from an unprotected scaffold platform. [NESI] had a duty under OSHA standards and contractually to provide[] a minimum level of safety protection. They failed to do so.

Berard Expert Report, at 3.

With this final paragraph, Berard effectively states a conclusion that NESI owed Adams a legal duty, that NESI breached its duty, and that NESI's breached caused Adams' injuries. Those conclusions overstep the bounds of permissible expert testimony by effectively telling the jury how to decide the ultimate legal issue of negligence.

Thus, defendant's motion in limine to preclude Berard's testimony will be granted to the extent that Berard seeks to state his conclusions concerning the legal elements of plaintiff's

---

[9] It does not appear that Berard should be permitted to opine that the regulatory exception does not apply; if nothing else, he has not disclosed such an opinion in his report.

negligence claim.

## IV.     Conclusion

For the reasons set forth above, defendant's motion to in limine to preclude the testimony of plaintiff's expert David L. Berard is GRANTED in part and DENIED in part. As a general matter, and subject to refinement in the context of particular questions at trial, Berard may testify as to:

>   (1)     the existence of OSHA regulations 29 C.F.R. §§ 1926.451(b) and (g);
>
>   (2)     the application of the facts of this matter to those regulations; and
>
>   (3)     his opinion that NESI violated those regulations.

Berard may not, however, testify as to his opinions:

>   (1)     that NESI owed Adams a duty;
>
>   (2)     that NESI breached its duty; or
>
>   (3)     that NESI's alleged breach caused Adams's injuries.

**So Ordered.**

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge

Dated: December 22, 2015