## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**MILTON B. ADAMS,**                    )
                                        )
   **Plaintiff,**        )
                                        ) **Civil Action No.**
  **v.**                       ) **13-12629-FDS**
                                        )
**NEW ENGLAND SCAFFOLDING, INC.,**  )
                                        )
   **Defendant.**         )
_____)

## MEMORANDUM AND ORDER ON
## <u>THIRD PARTY DEFENDANT'S MOTION TO DISMISS</u>

**SAYLOR, J.**

 This is a negligence action arising out of a workplace injury.  Milton B. Adams, while working as an employee of Rockwood Corporation, was injured at a work site in East Haven, Connecticut.  He fell approximately 40 feet from scaffolding that had been at least partially constructed by New England Scaffolding, Inc. ("NES").  Adams filed a negligence claim against NES, alleging that the scaffolding was constructed in a negligent and unsafe manner.  That claim was subsequently settled by Lexington Insurance Company, the insurance carrier for NES. Lexington, as subrogee of NES and third-party plaintiff, now seeks contribution and indemnification from third-party defendant Rockwood for the amount of that settlement. Lexington contends that Rockwood, as Adams's employer, was responsible for safety at the work site.

 Rockwood has moved to dismiss for lack of personal jurisdiction.  For the following reasons, that motion will be granted.

## I.      Background

### A.      Factual Background

Unless otherwise noted, all facts are stated as set forth in the complaint.

In August 2011, Rockwood contracted with NES to erect an exterior scaffolding skeleton around the Saltonstall Water Tower in East Haven, Connecticut.  (Compl. ¶ 3).  Rockwood is both incorporated and has its principal place of business in New York.  (Compl.  ¶ 2).  NES is both incorporated and has its principal place of business in Massachusetts.  (Compl. ¶ 1).

NES completed the scaffolding in early October 2011.  (Compl. ¶ 4).  Two weeks later, Milton B. Adams, a Rockwood employee and Massachusetts resident, fell approximately 40 feet from the scaffolding.  (Compl. ¶¶ 5, 18).  He was not wearing a safety harness at the time of the accident.  (Compl.  ¶ 6).

In October 2013, Adams filed a lawsuit against NES in this Court alleging negligence in the construction of the scaffolding.  (Compl. ¶ 10).  In January 2016, Lexington Insurance Company, the insurance carrier for NES, settled that lawsuit.  (Compl.  ¶ 12).

In November 2011, Adams began receiving worker's compensation payments from Rockwood through its compensation carrier, ABC Compensation Trust.  (Compl. ¶ 13).  Those payments were terminated in February 2014, when Rockwood concluded that Adams was not entitled to receive worker's compensation from its carrier.  (Compl. ¶ 14, 16).  Rockwood argued that ABC did not provide coverage for work performed outside of New York and, because Adams was a resident of Massachusetts and because the accident occurred in Connecticut, he was not covered under Rockwood's worker's compensation coverage.  (Compl. ¶ 17, 18).

### B.      Procedural Background

On March 18, 2016, Lexington filed a complaint in this Court, seeking (1) contribution

from Rockwood for its proportional share of Adams's settlement and (2) indemnification from Rockwood in the full amount of the settlement, plus costs and attorneys' fees.  On April 1, 2016, Lexington and NES jointly moved to consolidate this case with the originally filed case brought by Adams against NES pursuant to Fed. R. Civ. P. 42.  The Court granted that motion.  On June 8, 2016, Rockwood filed its first responsive pleading in the case, moving to dismiss the complaint for lack of personal jurisdiction.

## II.    <u>Legal Standard</u>

When a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, a *prima facie* standard governs its determination. *United States v. Swiss Am. Bank*, 274 F.3d 610, 618 (1st Cir. 2001).  In conducting a *prima facie* analysis, the court is required to take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed), construing them in the light most favorable to the plaintiff; the court, however, should not credit "conclusory allegations or draw farfetched inferences." *Ticketmaster–N.Y. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).  Although the court will construe the facts in the light most favorable to the plaintiff in a motion to dismiss, the plaintiff still has the burden of demonstrating each jurisdictional requirement.  *See Swiss Am. Bank*, 274 F.3d at 618.

## III.    <u>Analysis</u>

The exercise of personal jurisdiction over a defendant must be authorized by statute and be consistent with the due process requirements of the United States Constitution.  *Nowak v. Tak How Invs., Ltd.*, 93 F.2d 708, 712 (1st Cir. 1996).  Federal courts exercising diversity jurisdiction apply the long-arm statutes of the states in which they sit. *Ticketmaster-N.Y.*, 26 F.3d at 204 (1st Cir. 1994).  "The jurisdictional requirements imposed by the Massachusetts long-arm statute are

quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc*, 825 f.3d 28, 34 (1st Cir. 2016).  Because the "modest differences" between the two are immaterial here, this analysis will begin directly with the constitutional test.  *Id.*

The Supreme Court has defined two categories of personal jurisdiction:  general and specific.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  General jurisdiction reaches "causes of action arising from dealings entirely distinct from" a foreign corporation's in state contacts.  *International Shoe Co. v. Wash.*, *Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945).  Specific jurisdiction is limited to claims that "aris[e] out of or [are] related to the defendant's contacts with the forum."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  Over the years, the Supreme Court "has increasingly trained on the 'relationship among the defendant, the forum, and the litigation,' *i.e.* specific jurisdiction, [and] general jurisdiction has come to occupy a less dominant place in the contemporary scheme."  *Daimler*, 134 S. Ct. at 758 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

### B.    General Jurisdiction

 "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  To be "at home" in a foreign state, a corporation must have affiliations with that state so substantial that it is "comparable to a domestic enterprise in that State."  *Daimler*, 134 S. Ct. at 758 n.11.  The Supreme Court has indicated that such jurisdiction will exist only in the "exceptional case."  *See id.* at 761 n.19.

This is not such an exceptional case.  It is undisputed that Rockwood is incorporated in

New York and has its principal place of business there.  Lexington contends that Massachusetts

courts have general jurisdiction over Rockwood on the basis of its "longstanding working

relationship [with NES], whereby NES would provide scaffolding for various Rockwood

projects," including several in Massachusetts.  (Pl. Mem. Opp. at 6).  Their relationships has also

involved bids between the parties and contract discussions.  (*Id.*).  Lexington contends that, by

virtue of that business relationship, Rockwood engaged in continuous and systematic activity in

Massachusetts.  (*Id.*).

Even assuming that Rockwood's conduct in Massachusetts could be categorized as

"continuous and systematic," Massachusetts courts still lack general jurisdiction over the

company.  Regularly engaging in business within a state does not itself make a corporation "at

home" in that state, as required for general jurisdiction.  *See Daimler*, 134 S. Ct. at 760–61

(holding that formulation of general jurisdiction based on substantial, continuous, and systematic

course of business is "unacceptably grasping"); *Helicopteros*, 466 U.S. at 418 ("[M]ere

purchases, even if occurring at regular intervals, are not enough to warrant a state's assertion of

*in personam* jurisdiction over a nonresident corporation in a cause of action not related to those

purchase transactions.").  Rather, "only a limited set of affiliations with a forum state,"

analogous to place of incorporation or principal place of business, "will render a defendant

amenable to all-purpose [general] jurisdiction there."  *Daimler*, 134 S. Ct. at 760.  As illustrated

in *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952)—according to *Daimler*, the

"textbook case" of general jurisdiction appropriately exercised over a foreign corporation, 134 S.

Ct. at 755–56—the relevant affiliations include maintaining an office in-state, keeping corporate

files there, having active bank accounts, holding meetings, and carrying on business

correspondence from there.  *See* 342 U.S. at 447–48.

Having a longstanding business relationship with a Massachusetts corporation does not make Rockwood analogous to a domestic corporation.  Rockwood does not own or lease any property in Massachusetts, it maintains no offices here, and it has no bank accounts here.  (Law Aff. ¶¶ 6–8).  Its contacts in Massachusetts are therefore insufficient to give rise to general jurisdiction.

### B.      Specific Jurisdiction

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities."  *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).  That nexus requires three things:  (1) "the plaintiff's claim must be related to the defendant's contacts" with the state; (2) "the defendant's contacts with the state must be purposeful"; and (3) "the exercise of jurisdiction must be reasonable under the circumstances."  *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005).  All three requirements must be met, but a strong showing on reasonableness can fortify a more marginal showing of relatedness and purposefulness.  *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).

### 1.      Relatedness

"Questions of specific jurisdiction are always tied to the particular claims asserted." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999) (citing *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) ("[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case")).  The requirement of relatedness "ensures fundamental fairness by protecting a defendant from being hauled into an out-of-state forum based on a single

contact with the forum that is wholly unrelated to the suit at issue." *Swiss. Am. Bank*, 274 F.3d at 623.

In the context of tort claims, the relatedness inquiry focuses on "whether the defendant's *in forum* conduct caused the injury or gave rise to the cause of action." *Swiss Am. Bank*, 274 F.3d at 622 (emphasis in original). Here, Lexington's claim for contribution is based on its allegation that Rockwood was responsible for work-site safety and that its negligent conduct caused Adams's injuries. (Compl. ¶¶ 25, 31–34). However, the work site was in Connecticut, Adams was injured in Connecticut, and any negligence on behalf of Rockwood relating to Adams's injury presumably happened in Connecticut. Lexington does not allege that any of Rockwood's conduct in Massachusetts caused Adams's injury in Connecticut. It therefore cannot be said that Adams's injury "would not have occurred 'but for' the defendant's forum-state activity," nor did "the defendant's in-state conduct give rise to the cause of action," *Massachusetts Sch. Of Law*, 142 F.3d at 35.

Lexington further contends that this action is related to Massachusetts because Adams was a Massachusetts resident at the time of his injury and because he subsequently sued NES in this Court as a consequence of its work in Connecticut. But the relevant inquiry is not so broad as to include any and all connections that the present action has with Massachusetts. Rather, the inquiry focuses only on the defendant's in-forum contacts that "caused the injury or gave rise to the cause of action." *Swiss Am. Bank*, 274 F.3d at 622. Lexington does not allege that either contracting with NES—a Massachusetts company—or hiring a Massachusetts resident caused Adams's injuries. Lexington's claim for contribution is therefore not related to Rockwood's in-state conduct.

### 2.      Purposeful Availment

Personal jurisdiction is only proper when a defendant "purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on those contacts." *Swiss Am. Bank*, 274 F.3d at 624.  Lexington contends that Rockwood purposefully directed its activities toward Massachusetts by negotiating and entering into a contract with a Massachusetts company. Where, as here, the claim asserted does not arise out of the defendant's physical presence in the forum state, the First Circuit "look[s] for some other indication that the defendant reached into the forum, such as mail or telephone contacts." *Swiss Am. Bank*, 274 F.3d at 622.

Advertising and soliciting business in Massachusetts, as well as voluntarily corresponding with Massachusetts residents, can be sufficient to satisfy the purposeful availment prong.  *See Ticketmaster-N.Y.*, at 716; *Reed & Reed, Inc. v. George R. Cairns & Sons, Inc.*, 519 F.Supp.2d 148, 155 (D. Me. 2007) (finding that defendant soliciting a Maine corporation to perform a job in New Hampshire satisfied purposeful availment prong).  Rockwood solicited NES, a Massachusetts corporation, to perform work in Connecticut and engaged in back-and-forth communications with it concerning that work.  (Pl. Ex. 4).  Rockwood thus intentionally reached into Massachusetts to create a beneficial relationship in a way that made jurisdiction in Massachusetts foreseeable.  *Cf. Phillips Exeter Acad.*, 196 F.3d at 292 (finding no purposeful availment where defendant neither reached into New Hampshire to create relationship nor received benefit from contact with New Hampshire).

### 3.      Reasonableness

The exercise of personal jurisdiction must be reasonable and fundamentally fair.  *See Pritzker v. Yari*, 42 F.3d 53, 63 (1st Cir. 1994).  To determine reasonableness, the First Circuit

considers what it calls "the gestalt factors":  (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.  *Nowak*, 94 F.3d at 717.  These factors are "not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice." *Ticketmaster-N.Y.*, 26 F.3d at 209.

The first factor, the defendant's burden of appearing, is only relevant if the burden to appear in plaintiff's chosen forum is "onerous in a special, unusual, or other constitutionally significant way" as compared to the burden of appearing in another appropriate forum.  *Pritzger*, 42 F.3d at 64.  Here, Rockwood does not—nor could it—contend that the burden of appearing in Massachusetts is significantly more onerous than the burden of appearing in Connecticut, where the conduct giving rise to this litigation took place.  Thus, this factor weighs in favor of a finding of reasonableness.

The second factor is the forum state's interest in adjudicating the dispute.  Here, Massachusetts does not have a strong interest in having its courts adjudicate this dispute.  The allegedly tortious conduct, and the injury, took place in Connecticut, not Massachusetts.  While Adams was a Massachusetts resident at the time of the accident, that does not weigh strongly in favor of a contrary finding, because he has already received a settlement to cover his injury-related costs and defendant currently does not have any employees who reside in Massachusetts. (Pl. Ex. 1).  Massachusetts does have some interest in protecting its resident corporations from unduly burdensome tort liability.  *See Roy v. Star Chopper Co., Inc.*, 584 F.2d 1124, 1129 (1st Cir. 1978) (noting state's interest in protecting resident corporations from excessive liability).

However, whether this case is heard in a federal district court in Massachusetts or one in Connecticut likely has little impact on that interest.

The third factor is the plaintiff's interest in obtaining convenient and effective relief. Here, there is no reason to think that Lexington would not be able to obtain effective relief in Connecticut or New York.  However, deference is owed to the plaintiff's choice of forum. *See Pritzger*, 42 F.3d at 64.  Thus, this factor weighs in favor of a finding of reasonableness.

The fourth factor, the interests of the judicial system, is "a wash."  *Nowak*, 94 F.3d at 718.  The underlying action between NES and Adams has concluded, and thus there is no risk of piecemeal litigation across multiple jurisdictions.  *Cf. Pritzker*, 42 F.3d at 64 (finding fourth factor weighs in favor of jurisdiction where otherwise "furcation of the dispute among several different jurisdictions" would result).  An equally effective resolution could be reached in New York or Connecticut.  *Cf. Nowak*, 987 F.2d at 46–47 (concluding fourth factor weighs in favor of jurisdiction where it was "far from clear that there [would] be any judicial resolution, let alone the most effective judicial resolution" if case did not proceed in Massachusetts).

The final factor, the common interests of all sovereigns in promoting substantive social policies, is also inconclusive.  The two most relevant social policies—ensuring workplace safety and protecting corporations from undue tort liability—point in opposite directions; the first suggests a Connecticut interest, the second a Massachusetts interest.  However, as above, whether this claim is litigated in a federal district court in Massachusetts, Connecticut, or even New York likely has very little substantive impact on those policies.

Considering all of the above, the test for specific personal jurisdiction is not satisfied. Rockwood purposefully availed itself of the privilege of conducting business activities in Massachusetts, but its contacts with Massachusetts are unrelated to Lexington's claim for

contribution.  There are thus not minimum contacts with the state such that the exercise of jurisdiction accords with "traditional notions of fair play and substantial justice."  *International Shoe*, 326 U.S. at 316.  The fact that two of the five gestalt factors point towards reasonableness does not overcome the unfairness of hauling defendant into court in a forum "wholly unrelated to the suit at issue."  *Swiss Am. Bank*, 274 F.3d at 623.  The Court therefore lacks personal jurisdiction over Rockwood for purposes of adjudicating this claim.

**IV.**   **<u>Conclusion</u>**

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: October 28, 2016